**SO ORDERED,**



**Judge Jason D. Woodard**
**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| CHARLES DALLAS HUNSUCKER, | ) ) ) | Case No. | 20-12226-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 13 |

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the *Objection to Allowance of Claim 9* filed by the debtor, Dallas Hunsucker ("the Objection") (Dkt. # 47), and the *Motion to Dismiss Case* filed by the debtor's ex-wife, Amy Hunsucker (the "Motion") (Dkt. # 39). An evidentiary hearing was held June 24, 2021, where the Court heard testimony from Dallas and admitted exhibits into evidence.

There are two questions before the Court, both related to the Hunsuckers' divorce. The first is whether Dallas owed Amy an ongoing child

1

support obligation during his bankruptcy case that he failed to pay.[1] This Court finds that at all times during the bankruptcy case, Dallas's child support obligation was either suspended or terminated. The Motion is therefore due to be denied.

The second question is whether Amy's claim was properly filed as a domestic support obligation or should be reclassified as an unsecured property settlement. If the claim is domestic support, it is both nondischargeable and entitled to priority treatment in the plan.[2] If it is a property settlement, it is dischargeable in a chapter 13 case and should be treated like all general unsecured claims in the plan.[3] The Court concludes that the majority of the claim is a property settlement, and the Objection is due to be sustained in large part.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (B), and (O).

---

[1] A chapter 13 debtor who fails to keep postpetition domestic support current is subject to dismissal and may not have his plan confirmed. *See* 11 U.S.C. §§ 1307(c)(11), 1325(a)(8).
[2] *See* 11 U.S.C. §§ 507(a)(1)(A), 523(a)(5), 1322(a)(2).
[3] *See* 11 U.S.C. § 1328(a).

2

## II. FACTS & PROCEDURAL HISTORY[4]

Dallas and Amy were married for fourteen years. The marriage produced two daughters, both still under the age of majority. A Consent Agreement[5] filed in the Chancery Court of Desoto County in April of 2019 signed by both Dallas and Amy provided that the chancery court would "make an equitable division of marital assets and marital debts accumulated or acquired by the parties during the marriage" and determine "whether to award alimony to one or the other party. . . ."[6]

After hearing testimony and considering the evidence, Chancellor Mitchell M. Lundy, Jr. granted physical custody of the children to Amy and set Dallas's monthly child support payment at $1,000.00.[7] Chancellor Lundy then extensively analyzed the *Ferguson* factors for property division, one of which focuses on "the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties. . . ."[8] Chancellor Lundy awarded Amy the "remaining funds in a Fidelity account,"[9] and entered judgment in favor of

---

[4] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[5] Creditor's Ex. # 1.
[6] *Id.* at 5, ¶¶ (c), (d).
[7] Creditor's Ex. # 2, pp. 2, 6; Creditor's Ex. # 3, p. 1, ¶ 3.
[8] Creditor's Ex. # 2, p. 11 (citing *Ferguson v. Ferguson,* 639 So. 2d 921, 928 (Miss. 1994)).
[9] Dallas had spent a portion of the funds. Amy was awarded the remainder in an attempt to achieve a roughly equal split. *Id.* at 12.

Amy "for her half of the equity [in their marital home] in the amount of $20,000.00."[10] This award, according to Chancellor Lundy's well-reasoned opinion, "would eliminate the need for an award of periodic alimony."[11] There is no analysis of the *Armstrong* factors or other mention of alimony in the thirteen-page opinion,[12] except that the chancellor did note that the award "could be satisfied in the form of monthly alimony payments."[13] That language creates some ambiguity as to whether the award was alimony or a property settlement. The opinion was incorporated into the Final Judgment of Divorce on June 10, 2019.[14]

For reasons unknown to this Court and somewhat irrelevant to the issues to be resolved here, the daughters were removed from Amy's care and sent to live with Dallas in June of 2020. On July 27, 2020, Chancellor Vicki Daniels entered a temporary restraining order suspending Dallas's child support obligation and formally ordering that the daughters reside with Dallas.[15] On March 18, 2021, Dallas filed a *Motion for Child Support and for Declaratory Relief*.[16] He requested "an order declaring that he does not owe

---

[10] Creditor's Ex. # 2, p. 11. The home was sold four years prior to the divorce. Dallas spent the equity, which is why Amy was awarded a judgment for half of the money instead of cash. *Id.* at 11, 12.
[11] *Id.*
[12] *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993) (enumerating factors to be considered by a chancellor when awarding alimony).
[13] Creditor's Ex. # 2, p. 11.
[14] Creditor's Ex. # 3, p. 4, ¶¶ 7(e), (f).
[15] Creditor's Ex. # 14, ¶¶ 2, 4.
[16] Creditor's Ex. # 12.

4

any child support to [Amy] for the months of July 2020 to October 2020."[17]  On April 5, 2021, Chancellor Daniels ordered that "any and all child support due from [Dallas] for the months of July 2020 through October 2020 has been paid and *the last child support payment due and owing from [Dallas] was for the month of June 2020.*[18]

The import of these dates is that Dallas filed his chapter 13 bankruptcy case on July 1, 2020.[19]  Because his child support obligation was either suspended or terminated during the entirety of his bankruptcy case, Dallas owes no postpetition child support.

In his bankruptcy schedules, Dallas listed $6,000.00 of prepetition "child support arrearage through July 2020"[20] and $43,795.00 in unsecured debt for a "[d]ivision of property in divorce [judgment]."[21]  Amy later filed Claim # 9-1 for the $6,000.00 in prepetition child support arrearage, which is not at issue here.  She then filed Claim # 9-2 to amend Claim # 9-1 and increased her claim to $50,975.00, all as domestic support.  Claim # 9-2 is comprised of the undisputed $6,000.00 prepetition child support arrearage, an additional $1,000.00 for postpetition child support for July 2020, and $43,795.00

---

[17] *Id.* at 2, ¶ 9.
[18] Creditor's Ex. # 15, ¶ 4 (emphasis added).
[19] (Dkt. # 1).
[20] (Dkt. # 1, p. 18).  At the hearing, Dallas testified, and the Court finds, that "July" should have been "June."  At the hearing, the parties also stipulated that the $6,000.00 arrearage was prepetition debt.
[21] (Dkt. # 1, p. 20).

5

representing the chancellor's award of her half of the home equity and the Fidelity account. Dallas then filed the Objection.[22]

### III. CONCLUSIONS OF LAW

Section 523 of the Bankruptcy Code includes two subsections pertaining to the dischargeability of claims arising from domestic relations. Section 523(a)(5) provides that a debtor may not discharge a "domestic support obligation," which is a debt "in the nature of alimony, maintenance, or support."[23] Section 523(a)(15) expands the category to include all other debts:

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . . .

In other words, subsection (a)(5) debts are generally alimony and child support while subsection (a)(15) debts are all other debts owed to a former spouse or child arising from domestic proceedings.

Although the combination of subsections (a)(5) and (a)(15) appear to render all domestic relations debts nondischargeable, that is not the case in chapter 13. In a chapter 13 case, § 523(a)(15) debts are dischargeable, while § 523(a)(5) domestic support obligations are not.[24] Section 1328 of the

---

[22] (Dkt. # 47).
[23] 11 U.S.C. § 101(14A)(B).
[24] *In re Humphries,* 516 B.R. 856, 865 (Bankr. N.D. Miss. 2014).

Bankruptcy Code, providing for a debtor's discharge upon completion of a chapter 13 plan, specifically provides:

> [T]he court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt. . . (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a).

Notably missing are § 523(a)(15) debts. Thus, only those debts that are truly supportive in nature, such as alimony or child support, are nondischargeable in a chapter 13 case.[25]

The Court of Appeals for the Fifth Circuit has held that "[w]hether a particular debt is a support obligation, excepted from discharge under 11 U.S.C. § 523(a)(5), is a question of federal bankruptcy law, not state law."[26] In *In re Evert*, the Fifth Circuit found that "if the agreement between the parties clearly shows that the parties intended the particular debt in question to reflect either support or a property settlement, then that characterization will normally control."[27] But in making the determination, the bankruptcy court "is not inextricably bound to the labels placed on obligations by the parties to a domestic relations proceeding."[28] The Court may independently evaluate the

---

[25] *See Davidson v. Davidson (Matter of Davidson)*, 947 F.2d 1294, 1296–97 (5th Cir.1991).
[26] *In Matter of McCloskey*, 659 F. App'x 196, 199 (5th Cir. 2016).
[27] 342 F.3d 358, 368 (5th Cir. 2003).
[28] *In re Sheffield*, 349 B.R. 484, 488 (Bankr. N.D. Miss. 2006). "In fact, a spouse is not barred from arguing in bankruptcy court that certain obligations constitute alimony or support even if that spouse argued to the contrary in state court." *Matter of Dennis*, 25 F.3d 274, 278 (5th Cir. 1994).

7

divorce and/or separation decree and if it is ambiguous, may look to extrinsic evidence.[29] "Whether a particular debt is nondischargeable. . . is an issue that must be proven by a preponderance of the evidence with the burden of proof to be carried by the party challenging dischargeability," which here, is Amy.[30]

The Fifth Circuit has not established a comprehensive list of factors for courts to consider when determining whether an award is domestic support or a property settlement, probably due to the state-specific nature of domestic relations law.[31] The strongest suggestion to lower courts is to examine "the intent of the parties at the time a separation agreement is executed," and "in a situation. . . where the written agreement and divorce decree in both form and substance clearly establish the nature of the obligation," to go no further.[32] Pre-BAPCPA, the Fifth Circuit outlined "a nonexclusive list of factors" that

---

[29] *Sheffield,* 349 B.R. at 490.
[30] *In re Potts*, No. 18-11882, 2020 WL 476592, at *4 (Bankr. N.D. Miss. Jan. 29, 2020) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).
[31] In *In re Nunnally*, the Circuit outlined factors that may be considered in determining whether a domestic obligation constitutes alimony, support, or maintenance, such as "the earning power of the parties, as well as their business opportunities, the physical conditions of the parties, probable future need for support, and educational background. . . ." 506 F.2d 1024, 1026 (5th Cir. 1975). But *Nunnally* seems directed to Texas divorces, where permanent alimony was once non-existent. *See Evert,* 342 F.3d at 370; *Matter of Benich,* 811 F.2d 943, 945 (5th Cir. 1987). In *Evert,* the Fifth Circuit found certain cases "instructive" and "persuasive," but none binding. *Evert,* 342 F.3d at 368, 371. Recently, Judge Marvin Isgur noted that "in instances where it is unclear whether an obligation is intended to be a part of a property settlement agreement or in the nature of alimony, maintenance, or support," a court may consider "a non-exclusive list [of] factors," like the *Nunnally* factors. *In re Beacham*, 520 B.R. 561, 563–64 (Bankr. S.D. Tex. 2014).
[32] *Evert*, 342 F.3d at 368, 370. *See also Matter of Davidson*, 947 F.2d at 1296–97 ("the bankruptcy court evaluates the intent of the parties at the time they established the alimony/division agreement").

may be considered when determining "whether a divorce obligation constitutes alimony, maintenance, or support."[33] They were "the parties' disparity in earning capacity, their relative business opportunities, their physical condition, their educational background, their probable future financial needs, and the benefits each party would have received had the marriage continued."[34] The Circuit has noted that "[o]ne characteristic indicative of alimony is that [an award] is normally subject to modification if the beneficiary no longer needs the support," but an "obligation is part of a property division [if] it is not altered by a change in the circumstances of the beneficiary."[35] The Circuit has also noted that an award of "payments over time, rather than one lump sum payment," may be indicative of alimony.[36]

This Court has previously recognized there is no comprehensive test and in *In re Sheffield*, the Honorable David Houston, III, informed by Fifth Circuit precedent and Mississippi law, began the process of crafting factors for this district to determine whether an obligation is "indeed in the nature of alimony or support."[37] Those factors were:

---

[33] *Matter of Dennis*, 25 F.3d at 279.
[34] *Id.*
[35] *Evert,* 342 F.3d at 369.
[36] *Id.* But the Circuit was clear that "this factor is not dispositive."
[37] 349 B.R. at 488–89.

- Will the obligation terminate on the remarriage of the other spouse?
- What are the relative earning capacities of the parties?
- Are the payments being made directly to the other party?
- Is the payment enforceable by contempt?
- How do the parties treat the obligation for tax purposes?
- What are the reasonable and necessary living expenses of the receiving spouse?
- Is the obligation subject to modification if economic circumstances change?
- What was the nature of the property awarded to the other spouse, e.g., the wife was awarded an automobile with the husband to make payments thereon-was the automobile necessary for the wife's livelihood? The transportation of a dependent?[38]

Those factors serve as an excellent starting point, and, in fact, have been used by the Court over the years.[39] Since *Sheffield*, the law has continued to evolve and the factors should keep pace. As there is no controlling authority, an update of the factors is warranted.

For instance, Congress has since passed the Tax Cuts & Jobs Act of 2017.[40] The Act provides that for agreements or awards made after December 31, 2018, alimony payments are not deductible from the income of the payor, nor includable in the income of the payee.[41] This change also applies to

---

[38] *Id.* at 489.
[39] *See, e.g., Humphries*, 516 B.R. 856; *Potts*, 2020 WL 476592.
[40] 26 U.S.C.A. § 62(10). *See also* Internal Revenue Service, *CLARIFICATION: Changes to deduction for certain alimony payments effective in 2019* (https://www.irs.gov/forms-pubs/clarification-changes-to-deduction-for-certain-alimony-payments-effective-in-2019); BUDGET FISCAL YEAR, 2018, PL 115-97, December 22, 2017, 131 Stat. 2089.
[41] *Id.*

modifications after December 31, 2018.⁴² As a result, one factor–how the parties treat the obligation for tax purposes–no longer applies to all cases.

Debtor's counsel also correctly points out that contempt powers can apply to any order, not just support orders. A contempt citation is "proper when [a party] 'has willfully and deliberately ignored the order of the court,'"⁴³ and the Mississippi Supreme Court has noted that chancery courts have substantial discretion to enforce property settlement orders via contempt.⁴⁴ As contempt is an available remedy for both unpaid domestic support obligations and property settlements in Mississippi, another factor–whether the payment is enforceable by contempt–may not be particularly helpful in determining whether a debt should be considered domestic support.

A new factor might be more helpful in Mississippi cases. One indication that the chancellor intended the award to be alimony is a discussion of the *Armstrong* factors, while property settlements are crafted using the *Ferguson* factors.⁴⁵ In *Ferguson*, the Mississippi Supreme Court recognized the "need for guidelines to aid chancellors in their adjudication of marital property

---

⁴² Internal Revenue Service, *Tax Reform Basics for Individuals and Families*, No. 5307 (Rev. 6-2020) (https://www.irs.gov/pub/irs-pdf/p5307.pdf).
⁴³ *Hunt v. Hunt*, 289 So. 3d 313, 317 (Miss. Ct. App. 2019), reh'g denied (Feb. 11, 2020).
⁴⁴ *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (Miss. 2014). *See also Switzer v. Switzer*, 460 So. 2d 843, 847 (Miss. 1984) (finding that an ex-husband was "correctly adjudged in contempt of court" for violating a property settlement agreement incorporated into a final decree of divorce). *See also* Miss. Code. Ann. § 9-5-87.
⁴⁵ *Armstrong*, 618 So. 2d 1278; *Ferguson,* 639 So. 2d 921.

division" and directed chancery courts to "evaluate the division of marital assets by following [these] guidelines."[46] One of the eight *Ferguson* factors encourages chancellors to determine the "extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties. . . ."[47] A property settlement may be used to "finalize the division of assets and conclude the parties' legal relationship, leaving them each in a self-sufficient state, where the facts and circumstances permit total dissolution."[48] "[I]f the marital assets, after equitable division and in light of the parties' non-marital assets, will adequately provide for both parties, then 'no more need be done.'"[49] But, if such a division "leaves a deficit for one party, then alimony should be considered."[50]

If a chancery court finds that alimony is necessary, an analysis of what have come to be known as the *Armstrong* factors should "be considered by the chancellor."[51] If the opinion includes an analysis of the *Ferguson* factors, but

---

[46] *Ferguson,* 639 So. 2d at 928.
[47] *Id.*
[48] *Id.* at 929.
[49] *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 880 (Miss. 1999) (citing *Johnson v. Johnson*, 650 So. 2d 1281 (Miss. 1994) (discussing *Ferguson*)).
[50] *Kilpatrick*, at 880.
[51] *Armstrong*, 618 So. 2d at 1280.

12

does not mention the *Armstrong* factors, that would strongly indicate that the award is a property settlement.[52]

Mindful of the Fifth Circuit's guidance, Judge Houston's excellent decision in *Sheffield,* and the evolution of the law, this Court will now consider the following factors to differentiate between a domestic support obligation and a property settlement:

> 1. Will the obligation terminate on the remarriage or death of the other spouse?
> 2. What were the relative earning capacities of the parties at the time of the divorce?
> 3. Did the state court examine the *Ferguson* or *Armstrong* factors?
> 4. How do the parties treat the obligation for tax purposes, if the award or agreement was finalized prior to January 1, 2019?
> 5. What were the reasonable and necessary living expenses of the receiving spouse at the time of the award?
> 6. Is the obligation subject to modification if economic circumstances change?
> 7. What was the nature of the property awarded to the other spouse?

As before, the Court is not obligated to treat each factor equally, but may instead accord the appropriate weight to each, given the subjective facts of each case.[53]

---

[52] The Court of Appeals of Mississippi recently noted, "[s]hould [a] chancellor determine the division of marital property to be adequate, consistent with *Ferguson*, then there is no need to conduct an *Armstrong* analysis." *See Coleman v. Coleman*, No. 2020-CA-00429-COA, 2021 WL 3046646, at *6 (Miss. Ct. App. July 20, 2021). Further, "when a state court enters an order after articulating the factors it considers, the label attached to the obligation by the court is entitled to great weight." *4 Collier on Bankruptcy* ¶ 523.11[6][a] (Richard Levin & Henry J. Sommer eds., 16th ed.).

[53] *Humphries*, 516 B.R. at 865.

Beginning with the first factor, the award was in effect immediately and was not contingent on Amy's marital status. The remainder of the Fidelity account has been turned over, but the parties continue to dispute how much should have been in the account and how much Dallas spent before turning it over. The marital home had been sold four years before the divorce, resulting in $40,000.00 in equity. Dallas had already spent the money, which is why Amy was awarded a $20,000.00 judgment for her half rather than immediately receiving the cash. Both the account and the home were marital assets that were essentially split down the middle, and there is no indication from the divorce documents that this obligation would terminate upon Amy's remarriage or death.[54] The first factor suggests that Dallas's obligation is a property settlement.

The second factor requires an examination of the parties' relative earning capacities at the time the state court made its decision. Dallas testified to his 2016 and 2017 earnings, which Chancellor Lundy also considered. Dallas also testified, in estimation, concerning Amy's earning capacity during those years. Chancellor Lundy found that Dallas had "always made substantially more money" than Amy.[55] This factor leans in favor of domestic support.

---

[54] Creditor's Ex. # 1; Creditor's Ex. # 2, p. 8, ¶ 1, p. 12, ¶ 8.
[55] Creditor's Ex. # 2, pp. 11–12.

14

The third factor is the extent of the chancellor's analysis of the *Ferguson* and/or *Armstrong* factors. Chancellor Lundy examined the *Ferguson* factors at length. He also explicitly recognized that "if. . . an equitable distribution. . . will adequately provide for both parties, then 'no more need be done.'"[56] He did no more and there is no examination of the *Armstrong* factors. This factor weighs heavily in favor of a property settlement.

The fourth factor is how the parties treat the obligation for tax purposes. Because the divorce award was entered after January 1, 2019, this factor does not apply.

The fifth factor examines the reasonable and necessary living expenses of the receiving spouse. Amy, who has the burden on nondischargeability and proving her claim here, did not testify or even appear.[57] Without evidence, the Court cannot make an accurate determination of her expenses. This weighs against Amy's position, as she has the burden.

As to the sixth factor, there is nothing to indicate that the award was subject to modification. Dallas later petitioned the chancery court to give him

---

[56] Creditor's Ex. # 2, p. 8. *See also supra* note 49.
[57] A creditor objecting to discharge under § 523 bears the burden of proof by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279 (1991). Further, "if [a] debtor succeeds in producing sufficient rebuttal evidence [to a creditor's claim], the burden of going forward shifts back to the claimant who bears the ultimate burden of persuasion to establish the validity and amount of its claim by a preponderance of the evidence." *In re Gray*, No. 18-12760-JDW, 2019 WL 1425074, at *4 (Bankr. N.D. Miss. Mar. 28, 2019) (citing *In re Taylor*, 2013 WL 1276507, at *5 (Bankr. N.D. Miss. 2013)).

15

"credit for child support for all of the time he. . . had care and control" of his daughters, but that was a request for credit against the award, not modification.[58] Further, requesting modification does not mean the award is modifiable. In a perfect world, the obligation would have been satisfied immediately and there would have been no contemplation of modification. This factor weighs in favor of a property settlement.

Finally, the "nature of the property awarded to the other spouse" indicates that it was a property settlement. Both the Fidelity account and the homestead equity were assets acquired during the marriage. The chancellor split both down the middle, awarding half to each spouse. In addition, Amy kept her vehicle and retained responsibility to pay certain debts.[59] Dallas kept his vehicle and assumed various other debts.[60] The asset allocation was intended to be a clean split but for the monthly child support payments. Splitting marital assets down the middle, as the chancellor did here, suggests a property settlement.

Applying the factors with the appropriate weight to each, examining the language in the divorce documents, and deferring to the chancery court's thorough findings, this Court finds that Dallas's obligation is not a domestic support obligation, but a property settlement. As such, it is "not within the

---

[58] Creditor's Ex. # 12, p. 2, ¶ 8.
[59] Creditor's Ex. # 2, p. 13.
[60] *Id.*

16

scope of § 523(a)(5) and [is] not excepted from discharge" in this chapter 13 case.[61]

Accordingly, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the Motion (Dkt. # 39) is **DENIED** because Dallas did not owe child support to Amy after June 2020. The Objection (Dkt. # 47) is **OVERRULED** as to the $6,000.00 child support arrearage, which is a nondischargeable domestic support obligation that shall be paid as a priority debt through the confirmed plan. The Objection is **SUSTAINED** as to the $1,000.00 claimed for July 2020, which is **DISALLOWED,** and the remaining $43,795.00, which is **RECLASSIFIED** as a general unsecured claim.[62]

## END OF ORDER ##

---

[61] *In re Gaetaniello*, 496 B.R. 238, 241 (Bankr. M.D. Fla. 2013) (citing *8 Collier on Bankruptcy* ¶ 1328.02[3][g] (16th ed. 2012)).

[62] This order does not disturb any judgment lien Amy may hold.

17